HAWKES, Respondent, vs. SLIGHT and wife, Appellants.

*March 23 — April 9, 1901.*

*Wills: Foreclosure of legacy: Parol gift of land: Evidence: Appeal:*
*Questions reviewed.*

1. In an action to enforce a legacy alleged to be a charge on certain real estate, where the defendant claimed ownership under a parol gift made many years prior to the will, in the absence of any specific finding upon the question of the alleged gift, and the uncertainty as to the proper construction of a finding that the defendant never acquired title except under the terms of such will, the supreme court on appeal will examine the evidence upon the question of the parol gift to ascertain whether the preponderance thereof supports the plaintiff's contention.

2. A testator devised a farm to defendant, his son, charged with a legacy in favor of plaintiff, his daughter, the will being made in 1892. Defendant moved onto the farm in 1876, and had continued in possession for more than twenty years prior to the commencement of the action, making valuable improvements and paying the taxes, except for one year, when they were paid by testator, who took a receipt in his son's name. Defendant claimed title to the farm by parol gift from the testator at the time he moved onto the farm, though such claim was never heard by any member of the testator's family. In 1889 the testator stated to insurance officials, in the presence of the son, and without his denial, that the property was his, and, in an application for insurance on buildings thereon, the son stated that testator's title to the premises was absolute. During the first ten years of defendant's occupancy the testator used wood for his household and lime kiln from the farm, and when defendant sold any he asked permission of testator. Testator's relations with the members of his family were pleasant, no reason appearing why he would disinherit any of his children; but if the devise to defendant, with the charge thereon, was not upheld, the plaintiff would be disinherited, no other provision being made for her, and defendant would receive more than one third of the entire estate, four children and his widow surviving. *Held,* that the facts pointed strongly to and were consistent with an intention on the part of the testator to give the title to the farm to such son by will, and not by the alleged gift.

Hawkes vs. Slight and wife.

APPEAL from a judgment of the circuit court for Dodge county: JAMES J. DICK, Circuit Judge. *Affirmed.*

This is an action in equity to foreclose a legacy alleged to be charged upon certain real estate. One John P. Slight, the testator, died October 5, 1896, a resident of Watertown, in this state, having at the time of his death record title of the land in question, which land consisted of a farm of 154 acres in the town of Emmet, Dodge county. This farm for nearly twenty years prior to the testator's death had been in possession of his son the defendant *William T. Slight*, and was known in the family as the "old farm." The. testator was also seised of another farm, consisting of 140 acres of land, in the same town, which was known as the "home farm." The acreage value of these farms was about the same, being about $90 per acre. The testator also left personal property to the amount of about $7,500. He left surviving him a widow and three sons,— *William*, John, and Frank,— and one daughter, the plaintiff, *Annie Hawkes;* all being adults and all married. By his will, which was made in November, 1892, he left the "home farm" to his son John, charged with a legacy of $4,000 (afterwards by codicil reduced to $3,000), payable to Frank, the "old farm" to his son *William*, the defendant, charged with the payment of a legacy of $4,000 to his daughter, *Annie*, the plaintiff; and the remainder of his property he left to his wife. His will was duly probated, and the estate settled and the property assigned in accordance with the terms of the will. The defendant *William* refused to pay to the plaintiff her legacy, and this action was brought to enforce and foreclose the same.

The defendant's answer admits that the testator originally owned the farm in controversy, but alleges that he made an oral gift of the same to the defendant *William* in the year 1876, in consideration of natural love and affection and of the defendant's marriage to his codefendant, and

further alleges that the defendant *William* has been in possession of said farm ever since October, 1876, paying the taxes thereon, and making considerable improvements in reliance on such gift. The answer also alleges title by adverse possession for more than twenty years since October, 1876, and denies that the testator owned the farm at the time of his death, and denies that the plaintiff's claim is a lien thereon. The evidence showed that the defendant *William* was married to his codefendant in September, 1876, and that he and his wife went to live upon the farm in question about October 25, 1876, and have ever since occupied the same, paying the taxes thereon for all that time, except two or three years; that the defendant *William* has kept up the fences on the land, made improvements thereon, consisting of the building of barns and other farm buildings, and breaking and grubbing a part of the land, which improvements amount, in all, as estimated by the defendant, to about $4,000. The evidence further showed that *William* has taken all the profits of the land during the entire time which he has been in possession. There was considerable evidence to the effect that John P. Slight, the father, had made declarations to various persons during his lifetime that he had given the farm to *William*. There was also evidence of declarations of John P. Slight and of acts of the parties tending to show that John P. Slight never regarded the farm as having been given to his son, but that he always claimed title thereto. The court made no specific finding on the question of gift, but found, among other facts, that John P. Slight died seised of the land in question; that the defendant *William T. Slight* never was the owner of said real estate, and never held the same or any part thereof by adverse possession, and never at any time acquired any title to said real estate, except by the terms and under the conditions of the last will of said John P. Slight.

Hawkes vs. Slight and wife.

Judgment was entered establishing the legacy as a lien upon the said real estate, and providing for the sale of the same unless the legacy should be paid, and from this judgment the defendants appeal.

For the appellants there was a brief by *Sanborn, Luse, Powell & Ellis* and *J. E. Malone,* attorneys, and a supplemental brief signed also by *Burr W. Jones,* of counsel, and oral argument by *Mr. A. L. Sanborn* and *Mr. Jones.*

*Harlow Pease,* for the respondent.

WINSLOW, J.   The defendant *William* claimed to have acquired title to the farm by an executed parol gift from his father in 1876, and by adverse possession for more than twenty years.   The trial court found specifically against the claim of title by adverse possession, but made no specific findings upon the question of the alleged gift, unless it can be said that the finding to the effect that the defendant *William* never acquired any title except under the terms of his father's will be such a finding.   This latter finding is, at least, of doubtful import.   While it may be construed as negativing the fact of gift, it is also susceptible of a construction to the effect that title could not, as matter of law, be transferred by parol gift.   In view of this uncertainty as to the proper construction of the findings, we have concluded to examine the evidence upon the question of the parol gift, and ascertain whether the preponderance thereof supports the plaintiff's contention.   If it be found that such is the case, then, in the absence of any other established defense, the judgment must be affirmed.   *Brown v. Griswold,* 109 Wis. 275.   It is true that title to land cannot be transferred by parol (Stats. 1898, sec. 2302), but it is equally true that equity will protect and specifically enforce a parol gift of land if accompanied by possession, and the donee, induced by the promise to give it, has made valuable improvements upon the property.   *Neale v. Neales,* 9 Wall. 1.   Such a gift,

however, must be established by certain and unmistakable evidence and the fact that substantial and valuable improvements were made in reliance upon it must be directly and unequivocally proved. *Dawson v. McFaddin,* 22 Neb. 131; Pomeroy, Cont. §§ 130, 131. The question, therefore, is whether the evidence clearly and unmistakably shows in the present case that there was a parol gift of the land in question by the testator to his son in 1876, in reliance upon which the defendant made substantial improvements upon the land. There is no direct evidence of any conversation in which the testator said to his son that he gave him the farm, or that the son went into possession as the result of such a conversation, but the facts relied upon to substantiate the claim of an enforceable parol gift are briefly as follows: In October, 1876, the defendant *William,* with the knowledge and consent of his father, went to live upon the farm with his newly married wife, and has lived upon it ever since, receiving the ordinary rents and profits, paying the taxes for all years except one when his father paid them in his son's name, making improvements, in the way of buildings and grubbing, aggregating about $4,000. During that time he has frequently claimed to third parties that he owned the farm. During that time, also, the testator made statements to numerous parties to the effect that he had given the farm to *William,* that it was *William's* farm, that he had given *William* a home, and the like. The defendant paid the premiums for insurance upon the farm buildings. When defendant went to live upon the farm, a tenant of his father had just moved out of the house, apparently by his father's direction, and the house was furnished with furniture and utensils by his father.

Upon the other side the claim was that the alleged gift was disproved by evidence tending to show the following facts: The testator stated to several persons at various times when the question of ownership of the land was mentioned

that he still owned it. (This testimony was received under objection and exception.) The testator's will, made in 1892, demonstrates that he still considered himself the owner of the land. The defendant's brother John, his mother, his sister, the plaintiff, and his cousin William J. Slight all testified that they never had heard the defendant claim that he owned the farm or that his father had given it to him during the testator's lifetime, and no member of the family testified to having ever heard of such claim. In 1884, 1889, and 1890 the defendant made written applications to the Hustisford Mutual Insurance Company for insurance upon the farm buildings and personal property, which he signed in his father's name, and in which it was stated that his father's title to the property was absolute. A barn burned upon the farm in 1889, and at a meeting between the officers of the company and the defendant and the testator held for the purpose of adjusting the loss in September, 1889, the testator stated to the officers in presence of the defendant, and without objection by him, that the property was all his, and the loss was settled on that basis; the money paid being afterwards used by defendant to replace the destroyed building. During the first eight or ten years after defendant went into possession of the farm the testator cut and hauled from seven to ten cords per year of firewood for his own use from the farm, and in 1884 cut and hauled away for use in his lime kiln about 250 cords of wood, without objection by the defendant. The defendant. for several years sold wood to the school district, and before doing so asked permission of his father to sell it. A lumber dealer testified that when the defendant came to purchase lumber of him to rebuild the burned barn in September, 1889, the defendant said he would have to see his father before he closed the deal, and that afterwards, on being called upon to pay a part of the bill, which had run for some years, he stated, as the witness recollects, that he did

not own the farm; that it belonged to his father. As to this transaction, the defendant, without specifically denying the lumber dealer's evidence, stated that he told the lumber dealer that he did not have the whole of his insurance money, and the dealer wanted to know if he could not get it, and "I didn't have title to the property, and couldn't raise the money." The tax rolls for 1877 and 1878 show that John P. Slight paid the taxes on the farm for those years, and the evidence shows that he also paid them for the year 1889, and took the receipt already made out in his son's name, and kept it among his own papers. As to the insurance transactions, the cutting and selling of wood, the payment of the tax of 1889 by the testator, there was no controversy, but the defendant claims that he paid the taxes of 1877 and 1878.

The foregoing is a substantially complete statement of the facts in evidence upon which the question of parol gift must be determined. Reviewing the facts, and rejecting the statements of the testator as to his ownership of the farm as self-serving declarations, we reach the conclusion, without difficulty, that the defendant has failed to establish by certain and unmistakable evidence that such a gift was made, or that his improvements were made in reliance thereon.

When the relationship of the parties is remembered, it seems very clear that the acts of the parties are fully as much, if not more, in harmony with the idea that the farm was intended to be devised to the defendant by will, than with the idea that it had been given outright to the defendant in 1876. The burden was upon the defendant to prove the gift clearly and unmistakably, and he is confronted with numerous admitted acts of himself and of his father of which he knew, which refute the idea of a completed gift most strongly, and tend to show that the defendant's possession was simply permissive. It is true that the defendant had paid considerable sums for taxes and improvements, but,

on the other hand, he has had the income of a valuable farm of 154 acres during the whole time, which must amount to far more than the expenditures which he had made. Again, the situation of the testator and his relations to his family are entitled to consideration in judging of the construction to be given to doubtful acts. The testator was on good terms with his children and his wife. No reason appears why he should desire to disinherit any of his children. The farm in question was found to be worth $14,500; the home farm, of 140 acres, at $90 per acre, would be worth $12,600, and he left personal property worth $7,500; making the value of his entire estate $34,600. Now, if the defendant's contention be sustained, it would result in the defendant's receiving considerably more than one third of the entire property, besides having had the rents and profits thereof for twenty years; his sister being disinherited; the mother and the other children each receiving from one fourth to one half of the amount received by the defendant. On the other hand, if the plaintiff's contention be sustained, the defendant still receives the largest individual share of the testator's estate.

We can come to no other conclusion than that the testator placed the defendant on the farm with the intention of giving him title by will, but not with the intention of transferring title by the gift itself. In our judgment, all the significant facts point strongly that way, or are entirely consistent with that idea; and we feel no hesitation in so deciding, even in the absence of a specific finding of the trial court upon the question.

As to the claim of adverse possession we need spend little time. The considerations already stated bear with practically equal force against this claim as against the claim of parol gift. Moreover, the trial court found directly against the defendant's claim of title by adverse possession, upon ample and persuasive evidence.

*By the Court.*— Judgment affirmed.