Rasmussen, Respondent, vs. Milwaukee Electric Railway & Transport Company and another, Appellants.*

*April 2—May 8, 1951.*

---

\* Motion of appellant Checker Cab Company for rehearing denied, with $25 costs, and motion of respondent for rehearing denied, without costs, and motion of respondent to modify mandate granted, without costs, on September 11, 1951.

For the appellant Milwaukee Electric Railway & Transport Company there were briefs by *Shaw, Muskat & Paulsen*, and oral argument by *Van B. Wake*, all of Milwaukee.

For the appellant Checker Cab Company there was a brief by *D. J. Regan* and *Erwin J. Kronsnoble,* both of Milwaukee, and oral argument by *Mr. Regan.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Kenneth P. Grubb* and *Edmund W. Powell* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb* and *Mr. Powell.*

BROADFOOT, J.   On the night of July 3, 1947, the plaintiff entered a taxicab operated by the Checker Cab Company in downtown Milwaukee.  She directed the cab driver to transport her to her residence at 3128 West McKinley avenue in Milwaukee.  The cab driver turned north on Twenty-Seventh street and planned to make a left turn and proceed west at the intersection of that street with West McKinley avenue. The streetcar was proceeding north on Twenty-Seventh street.  At some point south of the intersection, the exact distance being in dispute, the cab was driven upon the northbound streetcar tracks.  Automobile traffic southbound on Twenty-Seventh street was heavy and the cab driver was unable to cross.  He stopped the cab upon the tracks and the streetcar collided with the rear of the cab.  The collision occurred at about 10:30 p. m.  The front end of the streetcar and the rear end of the cab were damaged, and the plaintiff was rendered unconscious.  She regained consciousness at the scene of the accident and was taken to her home in another cab.

The defendants each claim that the driver of the other's vehicle was entirely at fault and that there is no credible evidence to sustain the determination of the jury that its operator was causally negligent.  One question in the special verdict was answered in favor of the Cab Company.  Although the jury found the cab driver causally negligent with respect to lookout and with respect to management and control of his cab, it found by its answer to another question that the cab driver was not negligent in failing to give timely signal

of the movement of the cab onto, or the stopping of the same on, the streetcar tracks. The Cab Company now contends that the only possible way in which negligence on the part of the cab driver might have contributed to cause the collision is the possibility that the cab driver cut across in front of the streetcar and suddenly stopped without giving the motorman a chance to stop. The Cab Company then contends that the jury definitely rejected this possibility by the finding that the cab driver did not fail to warn of the cab's movement onto the tracks and the stopping of the cab on the tracks.

There is, of course, a dispute as to the facts. The motorman testified that he saw the cab driver upon the streetcar tracks when the front of the streetcar was eighteen feet south of the south curb of McKinley avenue; that it stopped so abruptly that he was unable to stop the streetcar without a collision. On the other hand, the cab driver testified that he drove upon the tracks when he was one half to two thirds of a block away from the south curb of said avenue.

In their attempts to clear the respective operators of their vehicles, each defendant introduced evidence that, if believed by the jury, would establish causal negligence on the part of the driver for the other defendant. The facts are peculiar to this case and no useful purpose will be served by a detailed recital of the evidence as to negligence. It is sufficient to state that we have examined the record carefully and find that there is ample credible evidence to sustain the findings of the jury as to causal negligence on the part of the motorman and on the part of the cab driver. The trial court so held in ruling upon motions after verdict.

The Transport Company complains of two incidents that happened during the trial. At one point counsel for the defendants had been questioning the plaintiff as to testimony she had given in an action she had commenced to obtain a divorce from her husband. On redirect examination her counsel attempted, by way of explanation, to read into the

record some questions and answers in plaintiff's testimony in the divorce case following those upon which she had been questioned by the attorneys for the defendants. Some reference was made in one of those questions to a possible settlement with the Transport Company. At another point upon the trial, the cab driver testified that the motorman admitted after the accident that he had been involved in another accident that same evening. The testimony was stricken by the trial court. However, reference to that statement was made by the attorney for the Cab Company in his argument to the jury. In each instance the alert trial judge struck out the testimony and emphatically instructed the jury to disregard the same. The jury was also emphatically instructed to disregard the statement of counsel. No reversible error resulted from said incidents.

The Transport Company further contends that the excessive damages attributed by the court to prejudice on the part of the jury rendered the verdict legally perverse. The trial court did not find that the verdict of the jury was perverse, nor that any prejudice on the part of the jury was reflected in its answers to the questions on negligence. We are unable to find anything in the record that would indicate perversity on the part of the jury. The appellant is not entitled to a new trial on that ground.

In the court's decision on motions after verdict, it said:

"The court being convinced, after study of the evidence, much of which is subjective, and the court having also observed plaintiff's movements and physical condition throughout the long trial, that the jury's assessment in the sum of $35,629 for plaintiff's damages for discomfort, pain and suffering, and impairment of earning capacity (question 6 of verdict) is excessive and the obvious result of prejudice, misapplication of evidence, and the application of the mortality table as a certainty to a maximum amount of gross wages (without usual and well-known deductions) applicable

to an employment which plaintiff lost over seven months before her injury: It is ordered . . ."

When a trial court finds that the damages are excessive it is its duty to determine the least amount that an unprejudiced jury, properly instructed, would, under the evidence, probably assess. *Asplund v. Palmer*, 258 Wis. 34, 44 N. W. (2d) 624; *Reykdal v. Miller*, 216 Wis. 561, 257 N. W. 604. There are no questions raised upon this appeal as to the instructions. The trial court did not state that it was following this rule, and it is not entirely clear that it did so. Because it is not clear that the trial court followed this general rule in reducing the amount of damages determined by the jury, the judgment must be reversed with directions to the trial court to fix an amount of damages in conformity thereto, and give the plaintiff an election to take judgment for that amount or in the event of her failure to do so, to grant a new trial, upon the question of damages only, to the defendants.

Because of the possibility that there may be a new trial we do not comment upon the evidence as to plaintiff's injuries and the resulting disability.

This court has held that a plaintiff who has elected to take a reduced amount of damages rather than a new trial may not ask for a review of the trial court's action in reducing the award of damages when an appeal has been taken by the defendant. The plaintiff now contends that the original assessment of damages by the jury was supported by the evidence and requests the court to change the above rule so that plaintiff under such circumstances may move for a review of the order of the trial court. That request is denied.

*By the Court.*—Judgment reversed and cause remanded for further proceedings in accordance with this opinion. Costs to abide the final determination of the cause.